UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| JACQUELINE MISHLER,<br><br>    Plaintiff,<br><br>v.<br><br>LINDA S. MCMAHON,[1]<br>Commissioner of Social<br>Security,<br><br>    Defendant. | No. CV-06-191-CI<br><br>ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT IN PART AND REMANDING FOR ADDITIONAL PROCEEDINGS PURSUANT TO SENTENCE FOUR 42 U.S.C. § 405(g) |

BEFORE THE COURT are cross-Motions for Summary Judgment (Ct. Rec. 12, 17.) Attorney Lana C. Glenn represents Plaintiff; Assistant United States Attorney Pamela J. DeRusha and Special Assistant United States Attorney Nancy Mishalanie represent Defendant. The parties have consented to proceed before a magistrate judge. (Ct. Rec. 7.) After reviewing the administrative record and briefs filed by the parties, the court **GRANTS** Plaintiff's

---

[1] As of January 20, 2007, Linda S. McMahon succeeded Defendant Commissioner Jo Anne B. Barnhart as Acting Commissioner of Social Security. Pursuant to FED. R. CIV. P. 25(d)(1), Commissioner Linda S. McMahon should be substituted as Defendant, and this lawsuit proceeds without further action by the parties. 42 U.S.C. § 405 (g).

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT IN PART AND REMANDING FOR ADDITIONAL PROCEEDINGS PURSUANT TO SENTENCE FOUR 42 U.S.C. § 405(g) - 1

Motion for Summary Judgment, and remands the matter to the Commissioner for additional proceedings on an expedited basis.

## JURISDICTION AND PROCEDURAL HISTORY

On November 18, 1997, Plaintiff Jacqueline Mishler (Plaintiff) protectively filed an application for Social Security Income benefits. (Tr. 143-46.) Plaintiff alleged disability due to fibromyalgia, osteoarthritis, chronic depression, mental problems, anxiety attacks, severe pain and sleeplessness, with an onset date of October 25, 1995. (Tr. 143-46, 166.) Benefits were denied initially and on reconsideration. (Tr. 112.) Plaintiff requested a hearing before an administrative law judge (ALJ), which was held before ALJ Paul Gaughen on May 14, 1999, and continued to August 19, 1999. (Tr. 117, 122.) Plaintiff failed to appear at the scheduled hearing, and on August 27, 1999, after filing a Notice to Show Cause for Failure to Appear, ALJ Gaughen dismissed Plaintiff's request for hearing. (Tr. 132.)

Plaintiff requested another hearing on October 15, 1999, which was treated as a request to review the ALJ's dismissal; the Appeals Counsel remanded the case to the ALJ. (Tr. 132-33.) A supplemental hearing was held on November 29, 2000, at which Plaintiff appeared with counsel. (Tr. 44-85.) The ALJ allowed records to be submitted post-hearing. He denied benefits on June 20, 2001. (Tr. 14-20.) A request for review was denied by the Appeals Counsel on April 26, 2002. (Tr. 6-7, 427-28.) Plaintiff filed a Complaint requesting review of the agency decision by the U.S. District Court for the Eastern District of Washington; Plaintiff's motion for summary judgment was granted in part and remanded to the Commissioner for

additional proceedings on March 27, 2003. (Tr. 431-43.) Plaintiff appeared before ALJ Gaughen again on April 29, 2004, and March 29, 2005. (Tr. 696-789.) Additional records were submitted by Plaintiff for the ALJ's review. (Tr. 5A-5C.) Plaintiff, who was represented by counsel, testified. Plaintiff's friend Peggy Patterson, vocational expert Daniel McKinney and medical expert Allen D. Bostwick, Ph.D., also testified. (Tr. 697, 744.) The ALJ denied benefits and the Appeals Council denied review. The instant matter is before this court pursuant to 42 U.S.C. § 405(g).

**STATEMENT OF THE CASE**

The facts of the case are set forth in detail in the transcript of proceedings, and are briefly summarized here. At the time of the hearing, Plaintiff was 50 years old. She quit school after the ninth grade, but completed her GED and had one year of college. (Tr. 705.) She was a widow and had four children, one of whom lived with her at the time of the hearing. She had no consistent work history. (Tr. 735.) She stated her friend drove her to the store and helped her shop because she had trouble due to pain and stiffness. (Tr. 769.) She testified her 13-year old son and friend helped her with household chores because she suffered ongoing pain from migraines and stiffness in her joints. (Tr. 769, 771-72.) She testified she has been the victim of physical and mental abuse from her boyfriend and continued to experience panic attacks frequently. (Tr. 773, 779.) She also stated the medications she took caused her drowsiness and dry mouth. (Tr. 767-68.)

**ADMINISTRATIVE DECISION**

At step one, ALJ Gaughen found Plaintiff had not engaged in

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT IN PART
AND REMANDING FOR ADDITIONAL PROCEEDINGS PURSUANT TO SENTENCE
FOUR 42 U.S.C. § 405(g) - 3

substantial gainful activity during the relevant time. (Tr. 19.) At steps two and three, he found her degenerative arthritis of the right knee and right hip and fibromyalgia were "severe" physical impairments that did not meet or equal the Listings. (Tr. 412.) He found Plaintiff's allegations regarding her limitation were not fully credible. (Tr. 409-10.) He concluded Plaintiff retained the residual functional capacity (RFC) for light to medium work, with the following restrictions: "She can lift and carry 20 pounds frequently and 35 pounds occasionally. She can stand and walk 6 hours in an 8-hour workday. She can occasionally engage in stooping, crouching, or balancing. She should avoid kneeling or crawling, and exposure to unprotected heights." (Tr. 412.) He found she had no past relevant work, and considering testimony from the vocational expert, determined she could perform other light and sedentary jobs in the national economy such as assembly, production inspector, and hand packager. (Tr. 413.)

**STANDARD OF REVIEW**

In *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001), the court set out the standard of review:

> A district court's order upholding the Commissioner's denial of benefits is reviewed *de novo*. *Harman v. Apfel*, 211 F.3d 1172, 1174 (9th Cir. 2000). The decision of the Commissioner may be reversed only if it is not supported by substantial evidence or if it is based on legal error. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance. *Id.* at 1098. Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Morgan v. Commissioner*, 169

F.3d 595, 599 (9th Cir. 1999).

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The ALJ's determinations of law are reviewed *de novo*, although deference is owed to a reasonable construction of the applicable statutes. *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000).

## SEQUENTIAL PROCESS

Also in *Edlund*, 253 F.3d at 1156-1157, the court set out the requirements necessary to establish disability:

> Under the Social Security Act, individuals who are "under a disability" are eligible to receive benefits. 42 U.S.C. § 423(a)(1)(D). A "disability" is defined as "any medically determinable physical or mental impairment" which prevents one from engaging "in any substantial gainful activity" and is expected to result in death or last "for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Such an impairment must result from "anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). The Act also provides that a claimant will be eligible for benefits only if his impairments "are of such severity that he is not only unable to do his previous work but cannot, considering his age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . . ." 42 U.S.C. § 423(d)(2)(A). Thus, the definition of disability consists of both medical and vocational components.
>
> In evaluating whether a claimant suffers from a disability, an ALJ must apply a five-step sequential inquiry addressing both components of the definition, until a question is answered affirmatively or negatively in such a way that an ultimate determination can be made. 20 C.F.R. §§ 404.1520(a)-(f), 416.920(a)-(f). "The claimant bears the burden of proving that [s]he is disabled." *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999). This requires the presentation of "complete and detailed objective medical reports of h[is] condition from licensed medical professionals." *Id*. (citing 20 C.F.R. §§ 404.1512(a)-(b), 404.1513(d)).

It is the role of the trier of fact, not this court, to resolve conflicts in evidence. *Richardson,* 402 U.S. at 400. If evidence

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT IN PART AND REMANDING FOR ADDITIONAL PROCEEDINGS PURSUANT TO SENTENCE FOUR 42 U.S.C. § 405(g) - 5

supports more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1988). If there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or non-disability, the finding of the Commissioner is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).

**ISSUES**

The question is whether the ALJ's decision is supported by substantial evidence and free of legal error. Specifically, Plaintiff argues the ALJ erred when he 1) improperly rejected treating and examining physicians' opinions; 2) found Plaintiff not credible; 3) improperly rejected lay testimony; and 4) relied on vocational expert testimony based on an incomplete hypothetical. (Ct. Rec. 13 at 34-41.)

**DISCUSSION**

**A.   Step Two: Mental Impairments**

To satisfy step two's requirement of a severe impairment, the Plaintiff must provide medical evidence consisting of signs, symptoms, and laboratory findings; the claimant's own statement of symptoms alone will not suffice. 20 C.F.R. § 416.908. The effects of all symptoms must be evaluated on the basis of a medically

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT IN PART
AND REMANDING FOR ADDITIONAL PROCEEDINGS PURSUANT TO SENTENCE
FOUR 42 U.S.C. § 405(g) - 6

determinable impairment which can be shown to be the cause of the symptoms.  20. C.F.R. § 416.929.  The Commissioner has passed regulations which guide dismissal of claims at step two.  Those regulations state an impairment may be found to be not severe *only* when evidence establishes a "slight abnormality" on an individual's ability to work.  *Yuckert v. Bowen*, 841 F.2d 303, 306 (9th Cir. 1988) (citing Social Security Ruling 85-28).  The ALJ must consider the combined effect of all of the claimant's impairments on the ability to function, without regard to whether each alone was sufficiently severe.  *See* 42 U.S.C. § 423(d)(2)(B) (Supp. III 1991). The step two inquiry is a *de minimis* screening device to dispose of groundless or frivolous claims.  *Bowen v. Yuckert*, 482 U.S. 137, 153-154.

In its review of the ALJ's June 20, 2001 decision (Tr. 420-26), the district court found as follows:

> Given the mental health history of continuing evaluations, consistent diagnoses, and use of medications including Prozac, Trazadone, Elavil, Zoloft, and a voluntary hospitalization for two weeks following a suicide attempt, the court concludes there is a sufficient demonstration of a mental health impairment to meet the Step Two severity requirements.  Accordingly, the ALJ's decision regarding a non-severe mental health impairment was error.

(Tr. 442.) (Citations to the record omitted.)

For reasons unclear, on remand, the ALJ found Plaintiff only had severe physical impairments at step two.  (Tr. 412.)  However, the record to date evidences continued diagnoses of mental disorders by treating, examining and non-examining doctors.

For example, clinic notes from Plaintiff's treating physician Andrea McCrady, M.D., indicate that from July to October 2003,

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT IN PART AND REMANDING FOR ADDITIONAL PROCEEDINGS PURSUANT TO SENTENCE FOUR 42 U.S.C. § 405(g) - 7

Plaintiff was diagnosed with depression with panic disorder, intermittent fibromyalgia,[2] myofascial back pain, chronic panic disorder and chronic pain. (Tr. 605-10.) From December 2003 to March 2004, Dr. McCrady reported diagnoses of major depression, anxiety, fibromyalgia and myocitis. She prescribed medication for depression, anxiety, pain and other symptoms. (Tr. 519-24.) In April 2004, Dr. McCrady discontinued Lorazapan (for severe stress) and Darvocet, but continued treating Plaintiff's symptoms with various other medications, including Trazadone, buspirone and hydrocodone. (Tr. 526.) Plaintiff was also referred to mental health services for counseling and medication evaluation, and pool therapy for fibromyalgia and pain control. (Tr. 520, 526, 542.)

In February 2003, examining psychologist James Bailey, Ph.D., diagnosed Plaintiff with chronic dysthymic disorder, panic disorder with agoraphobia, and dependent personality disorder. (Tr. 689, 693.) He noted "marked" severity in Plaintiff's verbal expression of anxiety, motor retardation,[3] and ability to interact appropriately

---

[2] A report from examining physician, William Bozarth, M.D., indicates Plaintiff also was seen by Dr. Stevenson, rheumatologist, for fibromyalgia on July 9, 2003. Although it is not totally clear from the records, it appears he diagnosed fibromyalgia; Dr. Stevenson prescribed bupropion and Paxil. (Tr. 646.)

[3] Medical expert Dr. Bostwick explained "motor retardation" refers to "motoric slowness," as in "slow responses, lack of animation, sometimes retarded speech . . . the rate of speech will be slow. . . . or they'll walk slow and kind of listless." (Tr.

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT IN PART AND REMANDING FOR ADDITIONAL PROCEEDINGS PURSUANT TO SENTENCE FOUR 42 U.S.C. § 405(g) - 8

in public contacts, and "moderate" severity in social withdrawal, depressed mood and suicidal trends. (Tr. 693.) Regarding Plaintiff's functional limitations, he found her moderately limited in several cognitive and social categories and markedly limited in her ability to interact appropriately in public contacts. (Tr. 694.) His conclusions were based on a medical status exam, the WAIS-III intelligence scale, and the Hamilton Rating Scale for Depression.[4] (Tr. 687-90.) He opined Plaintiff would need a smaller workgroup, limited contact with the public, but could do simple multi-step tasks, "despite her impairment." (Tr. 690.)

In September 2003, Plaintiff was examined by Jay Toews, Ed.D., Psychologist, who conducted a clinical interview, mental status exam, and administered the WMS-III, Trails A and B, MMPI-2 and Victoria Symptom Validity Test (VSVT). (Tr. 509-518.) Dr. Toews found the MMPI-2 results invalid, with indicators of over-reporting and failure to cooperate. (Tr. 513.) Although he did not diagnose

---

765.)

[4] The ALJ rejected Dr. Bailey's opinions, finding "Dr. Bostwick testified . . . that Dr. Bailey's report did not contain objective psychological testing and related an inconsistent diagnosis of post-traumatic stress disorder due to relationship abuse." (Tr. 408.) As noted above, the record shows objective testing was administered. Further, Dr. Bostwick was a non-examining psychologist. The ALJ's reasons for rejecting Dr. Bailey's opinion are not sufficiently specific and legitimate to reject an examining doctor's opinion. *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1996).

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT IN PART AND REMANDING FOR ADDITIONAL PROCEEDINGS PURSUANT TO SENTENCE FOUR 42 U.S.C. § 405(g) - 9

"malingering" (Tr. 754), he opined malingering and disability-seeking motivation could not be ruled out. (Tr. 515.) Testing revealed no deficits in cognitive functioning or memory. (Tr. 513, 515.) Regarding work related activities, Dr. Toews also opined Plaintiff may have problems working in close proximity with others. (Tr. 515.)

Records from Family Services Spokane (FSS) indicate Plaintiff participated intermittently in mental health counseling between November 2003 and February 2005. (Tr. 622-39, 674-82.) Jeffrey Hedges, D.O., saw her for medication management during this period, along with Dr. McCrady. (Tr. 677.) Dr. Hedges' diagnoses included probable dysthymia, psychotic disorder NOS, and probable post-traumatic stress disorder. In November 2004, he recommended continued treatment with Effexor and an increase in Geodon.[5] (Id.) In August 2004, chart notes indicate Dr. Hedges was prescribing Seroquel, an anti-psychotic. (Tr. 678.) In February 2005, mental health notes indicate a change of diagnosis to dysthymic disorder. The counselor noted the diagnosis might change to "adjustment

---

[5] Geodon, generic name ziprasidone hydrochloride, is prescribed to treat "schizophrenia and the manic episodes of bipolar disorder. . . . Because of its potentially serious side effects, Geodon is typically prescribed only after other medications have proved inadequate." Side effects include drowsiness, dry mouth, energy loss, headache, muscle aches and tightness, among others. *Physician's Desk Reference (PDR) Family Guide to Prescription Drugs*, found at www.pdrhealth.com.

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT IN PART AND REMANDING FOR ADDITIONAL PROCEEDINGS PURSUANT TO SENTENCE FOUR 42 U.S.C. § 405(g) - 10

1  disorder with disturbance of conduct." (Tr. 679, 681.)
2       At the ALJ hearing, after review of the entire record, medical
3  expert Dr. Bostwick, opined the medical evidence reflected medically
4  determinable psychological impairments. He testified the most
5  consistently reported diagnoses were under Listing 12.04, (affective
6  disorders). (Tr. 753.) He opined Plaintiff's records establish the
7  medically determinable psychological impairment of dysthymia, which
8  "captures her affective disorder over time." (Tr. 757.) He noted
9  personality disorder "has been relative consistent over time," along
10 with "avoidant/dependent and possibly borderline traits." (Id.)
11 This testimony is supported by the record. Even if Plaintiff did
12 not suffer from a single, chronic condition, the evidence
13 establishes a combination of medically determinable conditions and
14 treatment with medications with serious side effects; thus Plaintiff
15 has met the step two threshold. *Webb v. Barnhart*, 433 F.3d 683, 688
16 (9th Cir. 2005.) As found by this court in its prior order, the ALJ
17 erred when he found no severe mental impairments at step two.

18 **B.   Credibility Determinations at Step Two**

19      The ALJ and Dr. Bostwick expressed concerns over Plaintiff's
20 credibility, citing Dr. Toews' psychological testing results that
21 revealed over-reporting and indicators of malingering and
22 disability-seeking motivation. (Tr. 409, 515, 755.) The ALJ also
23 discounted Plaintiff's allegations of impairment caused by pain and
24 mental impairments based on her activities of daily living, prior
25 alcohol use, and her attendance at AA and Al-Anon meetings and
26 church. (Tr. 409-10.) The ALJ concluded, "After careful review and
27 consideration of all of the evidence, the undersigned finds several
28

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT IN PART
AND REMANDING FOR ADDITIONAL PROCEEDINGS PURSUANT TO SENTENCE
FOUR 42 U.S.C. § 405(g) - 11

inconsistencies and contradictions in the evidence overall and in the allegations made by the claimant" and found her less than fully credible. (Tr. 410.) However, for purposes of a step two finding, where there is no inconsistency between a claimant's complaints and her doctors' diagnoses, a claim cannot be found "groundless" under the *de minimis* standard of step two. *Webb*, 433 F.3d at 688 (*c.f. Ukolov v. Barnhart*, 420 F.3d 1002 (9th Cir. 2005) (step two denial affirmed where record had contained no objective evidence and claimant's doctor hesitant to conclude symptoms and complaints were medically legitimate).

Here, Plaintiff's complaints are consistent with the medical record in its entirety, which shows intermittent diagnoses of depression, panic disorder with agoraphobia, personality disorder, chronic pain, and dysthymic disorder, as well as testimony by the medical expert that there was a medically determinable mental impairment of dysthymia. Examining psychologist Dr. Bailey (who diagnosed chronic dysthymic disorder and panic disorder with agoraphobia) opined Plaintiff had "marked" and "moderate" severity in several functional categories that would have a significant impact on her work-related activities.[6] (Tr. 692-93.) Significantly,

---

[6] A mental impairment generally is considered non-severe for purposes of step two if the degree of limitation in the three functional areas of activities of daily living, social functioning, and concentration, persistence or pace is rated as "none" or "mild" and there have been no episodes of decompensation. 20 C.F.R. §§ 404.1520a(d)(1), 416.920a(d)(1).

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT IN PART AND REMANDING FOR ADDITIONAL PROCEEDINGS PURSUANT TO SENTENCE FOUR 42 U.S.C. § 405(g) - 12

Plaintiff's treating physician, Dr. McCrady diagnosed and treated Plaintiff for depression and fibromyalgia, prescribing anti-depressants and pain medication to relieve symptoms.[7] Dr. Bostwick testified that fibromyalgia can contribute to depression because (1) living with the condition can cause some depression, and (2) because fibromyalgia mimics depressive symptoms such as low energy, avoidance of activities, poor sleep and appetite disturbance. (Tr. 764.) These symptoms are consistent with Plaintiff's complaints. There is no indication that Dr. McCrady dismissed Plaintiff's complaints as unfounded or refused to treat her reported symptoms. Thus, there is not the total absence of objective medical evidence necessary to preclude a step two finding of "severe" mental impairment. *Webb*, 433 F.3d at 688.

## CONCLUSION

The court once again concludes Plaintiff has met the threshold at step two and the ALJ erred when he found no mental impairments at step two. Although Plaintiff may not succeed in proving she is disabled, as defined by the Social Security Act, the ALJ lacked

---

[7] A treating physician's opinions are given special weight in social security proceedings because of his or her familiarity with the claimant and her physical condition. *See Fair v. Bowen*, 885 F.2d 597, 604-05 (9th Cir. 1989). The ALJ cannot ignore or reject uncontradicted treating physician opinions without giving "clear and convincing" reasons. Even if Dr. McCrady's opinions are contradicted, the ALJ must give specific and legitimate reasons that are supported by the record. *Lester*, 81 F.3d at 830-31.

1  substantial evidence to find no medically severe mental impairment.[8]
2  The ALJ should continue the sequential evaluation beyond step two,
3  to include limitations caused by Plaintiff's severe physical and
4  psychological impairments (alone and in combination), pain and
5  medication side effects, as directed by the Regulations.  20 C.F.R.
6  §§ 416.920.929.  Accordingly,

7  **IT IS ORDERED:**

8    1.  Plaintiff's Motion for Summary Judgment **(Ct. Rec. 12 )** is
9  **GRANTED IN PART**.  **This matter is remanded to the Commissioner for**
10 **additional proceedings on an expedited basis, pursuant to sentence**

---

[8] The ALJ's finding that Plaintiff had no severe mental impairments at step two cannot be considered harmless error.  An error may be considered harmless where the error "occurred during an unnecessary exercise or procedure"; is non-prejudicial to the Plaintiff; is considered irrelevant to the determination of non-disability; or if the reviewing court can "confidently conclude" that no reasonable ALJ could have reached a different disability determination if erroneously disregarded testimony was credited. *Stout v. Commissioner, Social Sec. Admin.*, 454 F.3d 1050, 1056 (9th Cir. 2006).  The exclusion of medically determinable mental impairments during the sequential evaluation is clearly prejudicial to the Plaintiff; it is not conclusive that a reasonable ALJ, considering Plaintiff's limitations caused by her physical and mental impairments in combination (as required by the Regulations), along with the effects of medication, will determine Plaintiff was not disabled, as defined by the Social Security Act.  *Id*.

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT IN PART
AND REMANDING FOR ADDITIONAL PROCEEDINGS PURSUANT TO SENTENCE
FOUR 42 U.S.C. § 405(g) - 14

1  **four of 42 U.S.C. § 405(g);**
2      2.   Defendant's Motion for Summary Judgment **(Ct. Rec. 17)** is **DENIED;**
3      3.   An application for attorney fees may be filed by separate motion.

The District Court Executive is directed to file this Order and provide a copy to counsel for Plaintiff and Defendant. Judgment shall be entered for Plaintiff and the file shall be **CLOSED**.

DATED February 12, 2007.

                  S/ CYNTHIA IMBROGNO
            UNITED STATES MAGISTRATE JUDGE

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT IN PART AND REMANDING FOR ADDITIONAL PROCEEDINGS PURSUANT TO SENTENCE FOUR 42 U.S.C. § 405(g) - 15